Filed 11/14/13  P. v. Heller CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C067514 |
| v. | (Super. Ct. No. 09F07792) |
| LEROY ALLEN HELLER, | |
| Defendant and Appellant. | |

A jury convicted defendant Leroy Allen Heller of sexual penetration of a child 10 years of age or younger (counts one and two), committing a lewd and lascivious act on a child under 14 years of age (counts three through ten), and using a minor to pose for pornography (counts eleven through thirty-two).  The trial court sentenced defendant to a determinate term of 98 years eight months in prison and an indeterminate term of 60 years to life in prison.

Defendant now contends (1) the trial court abused its discretion in allowing the grandmother to identify defendant's fingers in a photograph; (2) a detective should not have been permitted to testify that he thought the mother was lying during an investigative interview; (3) the trial court improperly excluded defendant's out-of-court statement explaining why he left Sacramento, because the statement was admissible under the state-of-mind exception to the hearsay rule; (4) there was insufficient evidence to support instructing the jury with CALCRIM No. 372 [defendant's flight]; (5) the count six conviction for lewd and lascivious conduct involving a green sex toy must be reversed because there was insufficient evidence of more than one act with the green sex toy; (6) the count eight conviction for lewd and lascivious conduct involving a red object must be reversed because there was insufficient evidence of more than one act with the red object; (7) some of the convictions for using a minor to pose for pornography must be reversed because certain pairs of photographs do not depict different poses; (8) some of the sentences for using a minor to pose for pornography must be stayed pursuant to Penal Code section 654[1] because the photographs do not depict different poses; (9) additional sentences must be stayed pursuant to section 654 because they are based on the same conduct; and (10) insufficient evidence supports the count thirty-one conviction for using a minor to pose for pornography, because that charge was based on a blurry image of an arm.

We conclude (1) the trial court did not abuse its discretion in allowing the grandmother to identify defendant's fingers in a photograph, because the predicates for admission were present; (2) defendant forfeited his challenge to the detective's testimony because defendant did not object to the testimony in the trial court; (3) defendant did not preserve his claim of error based on the state-of-mind exception to the hearsay rule

---

[1] Undesignated statutory references are to the Penal Code.

because he did not assert the exception at trial; (4) substantial evidence supported instructing the jury with CALCRIM No. 372; (5) substantial evidence supports the count six conviction involving the green sex toy; (6) we will reverse the count eight conviction involving the red object, however, because there is insufficient evidence to support that conviction; (7) substantial evidence supports the convictions for using a minor to pose for pornography, and the People were not required to prove there was a different pose in each photograph; (8) it was not error to decline to stay the sentences imposed for using a minor to pose for pornography, because there is substantial evidence that the crimes were independent of one another; (9) the sentences imposed on count six [lewd and lascivious acts] and on counts eleven, twenty-seven and thirty-one [using a minor to pose for pornography] must be stayed pursuant to section 654; and (10) substantial evidence supports the count thirty-one conviction for using a minor to pose for pornography.

BACKGROUND

The minor lived with her mother, her half-sister, and her mother's boyfriend (defendant) from 2006 through 2008. Defendant cared for the minor when the mother was not home.

Child Protective Services (CPS) removed the minor from the mother's home in December 2008 because of domestic violence between the mother and defendant, and the minor began living with her grandmother. One day later, defendant went into hiding with the half-sister. Defendant testified that he left because he was worried CPS might also take the half-sister. He initially stayed with his family in Marysville, but the mother subsequently helped him travel with the half-sister to South Dakota, where the mother's son lived. Defendant and the half-sister stayed in South Dakota from March through August 2009.

Meanwhile, Pamela Aragon and Amber Bragg lived with the mother during the summer of 2009. Aragon and Bragg, along with a man named Michael Silence, stole some belongings from the mother's apartment. During the theft, Bragg found a SanDisk

3

brand camera memory card taped to the bottom of a computer keyboard. The memory card contained photographs showing the vaginal area of a child. Bragg and Aragon recognized the minor as the child in some of the photographs.

Silence and Aragon brought the memory card to the minor's grandmother. The grandmother viewed the photographs on the memory card, recognized the minor in some of them, and contacted the police.

Detective Vincent Recce of the Sacramento County Sheriff's Department's high tech crimes task force testified about People's exhibit 16, which is a report showing each photograph recovered from the memory card, along with information associated with each photograph, such as image numbers and the date and time of each photograph. Twenty-two photographs were taken during a 29-minute session on September 1, 2008.

Law enforcement also recovered two deleted photographs from the camera memory card. One photograph was taken on June 10, 2008, and shows what appears to be a green sex toy pressed against a girl's labia. The other deleted image was taken in July 2007 (around the same time defendant, the minor and the half-sister visited Georgia), and depicts the mother's granddaughter at a lake property in Georgia.

Deputy Cory Newman interviewed the minor in July 2009 in response to a CPS report concerning child molestation. The minor told Deputy Newman that defendant made her watch "nasty movies" and take her clothes off. She also reported that she had seen defendant put his fingers and penis inside her mother, and defendant did the same thing to the minor when her mother was not home. The minor said when they watched nasty movies, defendant tried to put his penis inside her but his penis was too big and her hole was too small. She said defendant also put a green mechanical penis inside her but could not get it in. According to the minor, defendant sometimes touched her through her clothes and rubbed her vagina, and sometimes inserted his fingers in her vagina, but defendant never took photographs of her without her clothes on. She related that defendant told her not to tell her mother about what he was doing because the mother

4

would "freak out" and defendant did not want to go to jail. The minor said she never told her mother because she did not want her mother and defendant to fight and did not want her mother to "freak out."

A specialist at the special assault forensic evaluation (SAFE) facility interviewed the minor in August 2009. A recording of the interview was played at defendant's trial. The minor initially denied that anyone touched her tee tee, a term she used for male and female genitalia, but subsequently disclosed that defendant touched her tee tee. She said defendant touched her vagina 27 or 29 times, touched her vagina with "mechanicals" 62 times, and took pictures of her vagina 10 times.

The minor reported the following during the interview: Defendant began touching her vagina when she was eight years old. The minor was nine years old when defendant last touched her. Defendant made her watch pornographic movies, took off her clothes and his clothes, and touched her vagina while she was on his bed. Defendant used his hand to touch her vagina on the outside. He also used a big green mechanical thing to wiggle the outside of her vagina, then used a small red mechanical penis on the outside of her vagina. She saw defendant's penis and it looked like the mechanical thing. On another occasion, defendant's penis touched the outside of her vagina. Defendant also showed her pictures of naked ladies on the television.[2] The minor never told anyone what happened with defendant because it was a secret. Defendant said he did not want the mother to "freak out" and he might get in trouble.

The mother learned in August 2009 that the minor had accused defendant of molesting her, but the mother still helped defendant hide from law enforcement officials. Defendant found out that the minor accused him of molesting her in late August or early

---

[2] The mother admitted there was pornography on her home computer, which was in her bedroom.

September 2009.  He left South Dakota in August 2009 and moved to Georgia. Defendant was arrested in Georgia in October 2009.

Although she was reluctant to talk about what happened to her because she was embarrassed and because defendant told her not to talk about those things, the minor testified at trial that defendant touched her vagina more than once and showed her his penis.  In addition, she said the statement in her diary that defendant "had sex on" her was true.

The mother admitted owning the green and silver sex toys depicted in the photographs presented by the prosecution.  Defendant knew where the mother kept her sex toys.

Defendant admitted he took nude photographs of the mother with sex toys, but he denied taking any nude photographs of the minor.  He said if he had taken the photographs of the minor he would not have left the camera memory card in his apartment where someone could find it.  He denied that he ever touched the minor's vagina with his penis, put his fingers inside the minor's vagina, rubbed the minor's vagina through her clothes, intentionally showed the minor his penis, or had the minor watch pornography with him.  He said he never directed the minor to use any kind of mechanical device on her vagina.  But defendant admitted the brown recliner shown in a photograph from the camera card was a recliner in his living room when he lived with the minor.  Defendant agreed that the person touching the minor in the photograph was in his apartment because the photograph showed the minor sitting on defendant's recliner.

Robin Morse testified as a character witness for defendant.  According to Morse, the mother asked for help to fabricate molestation charges against defendant so that the mother could obtain custody of the half-sister.  The mother admitted telling Morse that in order to get her children, the mother had to get rid of defendant.  But the mother denied asking Morse to help her frame defendant for child molestation.

6

A jury convicted defendant of sexual penetration of a child who is 10 years of age or younger (§ 288.7, subd. (b) -- counts one and two), committing a lewd and lascivious act on a child under 14 years of age (§ 288, subd. (a) -- counts three through ten), and using a minor to pose for the purpose of creating pornography (§ 311.4, subd. (c) -- counts eleven through thirty-two). The trial court sentenced defendant to a determinate term of 98 years eight months in prison and an indeterminate term of 60 years to life in prison.

## DISCUSSION

## I

Defendant contends the trial court abused its discretion in allowing the grandmother to identify defendant's fingers in a photograph.

Image 565[3] shows two fingers spreading the vaginal opening of a girl. The photograph is the basis of the prosecution's case on count nine [lewd and lascivious act] and count thirty-one [using a minor to pose for pornography]. Prior to trial, defendant moved in limine to exclude the grandmother's prior statement to law enforcement that, after looking at image 565, she recognized the fingers in the photograph as belonging to defendant. Defendant argued in limine that the grandmother's opinion lacked foundation, was speculative and was unduly prejudicial. The trial court denied the motion in limine, saying whether the grandmother could identify defendant's fingers was an issue relating to the grandmother's credibility.

Defendant renewed his objection to the grandmother's testimony during trial on the grounds that it lacked foundation, amounted to speculation, and should be excluded

---

[3] Defendant incorrectly identifies the pertinent photograph as image 566.

under Evidence Code section 352.[4]  The trial court allowed the grandmother to identify the fingers in image 565 as belonging to defendant.  The grandmother described her prior contacts with defendant and said that she had noted defendant's well-manicured fingernails during those contacts because "[i]t [was] something that you noticed, you know, especially in a man."

Defendant now claims the grandmother's testimony did not assist the jury, arguing that well-manicured fingernails are an insufficient foundation for the grandmother's lay opinion that the fingers in image 565 belonged to him.

Nonexpert testimony about the identity of a person depicted in a photograph is admissible if (1) the identification is rationally based on personal knowledge of the defendant's appearance at or before the time the photograph was taken, and (2) the testimony aids the trier of fact in determining the identity of the person shown in the photograph.  (Evid. Code, § 800; *People v. Mixon* (1982) 129 Cal.App.3d 118, 127-128.) "Where the photo is unclear, or the defendant's appearance has changed between the time the crime occurred and the time of trial, or where for any reason the . . . photo is not conclusive on the identity issue, the opinion testimony of those persons having knowledge based upon their own perceptions [citation] of defendant's appearance at or before the time the crime occurred is admissible on the issue of identity, and such evidence does not usurp or improperly invade the province of the trier of fact. [Citations.]"  (*People v. Ingle* (1986) 178 Cal.App.3d 505, 513; see also *People v. Perry* (1976) 60 Cal.App.3d 608, 613-615.)  The trial court's admission of lay opinion testimony will not be disturbed on appeal absent a clear abuse of discretion.  (*People v. Mixon, supra,* 129 Cal.App.3d at p. 127.)

---

[4] We do not address defendant's Evidence Code section 352 contention because he does not support it with argument on appeal.  (*People v. Jones* (1998) 17 Cal.4th 279, 304.)

8

The grandmother's personal knowledge of the appearance of defendant's fingers in 2008 and her examination of image 565 provide adequate foundation for her identification. Image 565 was taken in September 2008. The grandmother had regular contact with defendant throughout 2008. She took note of the appearance of defendant's fingernails during her contacts with him.

The identity of the person whose fingers are depicted in image 565 is not self-evident. As defense counsel pointed out in his closing remarks to the jury, the fingers shown in image 565 bear no scars or tattoos. Additionally, as defense counsel also pointed out, the skin color of the fingers in image 565 was darker than defendant's skin color at trial. Under the circumstances, the grandmother's testimony could help the jury identify the person whose fingers are shown in image 565. (*People v. Ingle, supra*, 178 Cal.App.3d at p. 513; *People v. Mixon, supra,* 129 Cal.App.3d at pp. 125, 131-132.)

The trial court did not abuse its discretion in admitting the grandmother's testimony because the predicates for admitting that lay identification opinion testimony were present.

II

Defendant next claims the trial court erred in permitting Detective Linke to testify that the mother was untruthful during an investigative interview.

Detective Linke testified that he terminated an investigative interview with the mother because he did not think she was being truthful about defendant's location. Detective Linke had information about defendant's whereabouts. He believed, based on information he had received, that the mother knew where defendant was hiding. He asked her about defendant's location and, according to Detective Linke, she did not answer his question truthfully. According to defendant, the net effect of Detective Linke's statement was "to offer an unqualified opinion on [the mother's] credibility," thereby denying defendant a fair trial.

9

Defendant's failure to object at trial to the specific testimony he now challenges forfeits his appellate claim. (Evid. Code, § 353; *People v. Williams* (2008) 43 Cal.4th 584, 620.) Defendant objected on relevance and Evidence Code section 352 grounds when Detective Linke testified that he made the decision to terminate the mother's interview. But there was no objection when Detective Linke was asked why he terminated the interview. In response to that question, Detective Linke said he thought the mother was untruthful. The portions of the record defendant cites in his reply brief do not show an objection to Detective Linke's statement that he thought the mother was untruthful.

Even if the claim was not forfeited, however, any error in admitting Detective Linke's testimony was harmless. The mother admitted lying to Detective Linke about defendant's location. In addition, defendant attacked the mother's credibility. Defendant argued that the mother took the pornographic photographs of the minor and planned to use the photographs to fabricate molestation charges against defendant. Defendant repeatedly told the jury there was no reason for Morse to lie about the mother's plan to frame defendant, implying that the mother lied when she denied asking Morse for help in fabricating charges against defendant.

In addition, the trial court instructed the jury that the jury alone determines the credibility of witnesses and the jury may reject the opinion of a witness. It is not reasonably likely the jury understood that it need not independently assess the mother's credibility. We presume the jury followed the trial court's instructions. (*People v. Homick* (2012) 55 Cal.4th 816, 879.) Defendant does not demonstrate that reversal is required based on Detective Linke's testimony.

III

Defendant further contends the trial court improperly excluded defendant's out-of-court statement explaining why he left Sacramento, because the statement was admissible under the state-of-mind exception to the hearsay rule.

10

Defendant claims he made an out-of-court statement to Michael Silence that defendant left California because he did not want CPS to take the half-sister.  Defendant wanted Silence to testify regarding defendant's out-of-court statement, arguing the statement was relevant because the prosecution was attempting to use defendant's flight as evidence of consciousness of guilt.  Defendant said the out-of-court statement was offered for the nonhearsay purpose of corroborating his anticipated trial testimony that he fled California to prevent CPS from taking the half-sister because of the domestic violence, and not because defendant knew he had molested the minor.  The trial court sustained the prosecution's objection that the proposed testimony was hearsay.

Defendant now claims his statement to Silence was admissible under Evidence Code section 1250, an exception to the hearsay rule for evidence of a person's then existing state of mind.  Evidence of a statement of the declarant's then existing state of mind, including a statement of intent, plan or motive, is admissible when (1) the evidence is offered to prove the declarant's state of mind at that time or at any other time when it is itself an issue in the action; or (2) the evidence is offered to prove or explain acts or conduct of the declarant.  (Evid. Code, §§ 1250, subd. (a), 1252.)  The state-of-mind hearsay exception requires a showing that the statement was made under circumstances which indicate its trustworthiness.  (*Ibid.*)

Once again, however, defendant failed to preserve his claim of error because he did not assert the state-of-mind exception, or any hearsay exception, at trial.  (*People v. Morrison* (2004) 34 Cal.4th 698, 724.)  Consequently, the prosecution did not have an opportunity to respond to the contention that the state-of-mind hearsay exception applied to defendant's statement, and the trial court had no opportunity to decide this fact-intensive claim.  (*People v. Edwards* (1991) 54 Cal.3d 787, 819-820 [determination of whether Evidence Code section 1250 applies requires examination of peculiar facts of the individual case].)  Nor did defendant establish a nonhearsay purpose for admitting his statement to Silence.

11

In any event, defendant does not show how the record at the time of the trial court's ruling supports admission of his hearsay statement under the state-of-mind exception. As the proponent of the statement, defendant bears the burden of producing evidence sufficient to establish the necessary foundation for its admission. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1178.) We do not assume error in the absence of a record affirmatively supporting such a finding. (*Ibid.*)

Defendant claims he is entitled to present a nonincriminating reason for his departure. But the jury heard from defendant, the mother and the grandmother that CPS removed the minor from the mother's home because of domestic violence issues. Detective Linke and the mother said at the time defendant fled Sacramento, child molestation allegations against defendant had not been disclosed. Defendant told the jury that he fled because he was concerned CPS would take the half-sister. Defendant said he did not learn about the minor's accusation against him until about five months after he left California. The jury heard ample evidence of an explanation for defendant's departure that did not point toward a consciousness of guilt. The trial court did not abuse its discretion by excluding defendant's statement to Silence. (*People v. Smith* (2003) 30 Cal.4th 581, 628-629 [in a case where the defendant sought to admit an audio recording of his jailhouse conversation with his wife to show remorse, the Supreme Court found no abuse of discretion in excluding the evidence in part because the defendant had ample opportunity to present other evidence of remorse].)

IV

Defendant also claims there was insufficient evidence to support instructing the jury with CALCRIM No. 372 [defendant's flight]. The trial court instructed the jury pursuant to CALCRIM No. 372 as follows: "If the defendant fled or tried to flee immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. [¶] If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of

12

that conduct. [¶] However, evidence that the defendant fled or tried to flee cannot prove guilt by itself." In defendant's view, the evidence showed that he left California to prevent CPS from taking the half-sister and to defuse his volatile relationship with the mother, not to flee prosecution for child molestation.

" 'A flight instruction is proper whenever evidence of the circumstances of [a] defendant's departure from the crime scene . . . logically permits an inference that his movement was motivated by guilty knowledge.' [Citation.]" (*People v. Abilez* (2007) 41 Cal.4th 472, 522; see also *People v. Visciotti* (1992) 2 Cal.4th 1, 60-61.) Here, while the jury could attribute an innocent explanation for defendant's flight, it could also reasonably infer that defendant fled in order to avoid arrest for his unlawful conduct with the minor, and that his leaving showed consciousness of guilt.

Substantial evidence supports the finding that defendant molested the minor and took sexually explicit photographs of her. Defendant left his apartment and went into hiding the day after CPS took the minor out of the mother's home. Defendant learned in late August or early September 2009 that the minor accused him of molesting her, and he continued to hide. In fact, he moved from South Dakota to Georgia in August 2009. On this record, there was no instructional error.

V

Defendant argues his count six conviction for lewd and lascivious conduct involving a green sex toy must be reversed because there was insufficient evidence of more than one act with the green sex toy.

Counts five and six both alleged lewd and lascivious conduct involving the green sex toy. Count five was based on the "first time" defendant used the green sex toy to touch the victim's vagina, and count six was based on the "last time" defendant used the green sex toy to touch the victim's vagina. Defendant says the evidence does not support convictions for separate acts involving a green sex toy.

13

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] . . . We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

Section 288, subdivision (a) provides that "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." Section 288 is violated by any touching committed with the intent to sexually arouse either the defendant or the child. (*People v. Martinez* (1995) 11 Cal.4th 434, 443, 452.) Causing a child to touch the child's own person is sufficient to establish a touching under section 288, subdivision (a). (*People v. Mickle* (1991) 54 Cal.3d 140, 176; *People v. Austin* (1980) 111 Cal.App.3d 110, 114-116.)

One of the deleted photographs on the camera memory card taken from defendant's apartment shows what appears to be a child's hand pressing a green sex toy against a girl's labia. That photograph was taken on June 10, 2008, when the minor was eight years old. The minor reported that defendant began touching her vagina when she was eight years old. The mother said the green sex toy in the photograph belonged to her. This evidence supports the finding that defendant caused the minor to touch herself with a green sex toy for the purpose of sexual arousal when she was eight.

The minor also said defendant used a green sex toy to wiggle the outside of her vagina when she was nine years old. That was the last time defendant touched her in a

14

sexual manner. The minor's statement supports the finding that defendant used a green sex toy to touch her vagina for sexual arousal on a second occasion.

Accordingly, there was substantial evidence from which the jury could fairly find two lewd and lascivious acts involving a green sex toy.

## VI

Defendant also asserts the count eight conviction for lewd and lascivious conduct involving a red object must be reversed because there was insufficient evidence of more than one act with the red object. Counts seven and eight both alleged lewd and lascivious conduct involving the red object. Count seven was based on the "first time" defendant used the red object to touch the victim's vagina, and count eight was based on the "last time" defendant used the red object to touch the victim's vagina. Defendant says the evidence does not support convictions for separate acts involving a red object. We agree.

The minor reported that when she was nine years old, defendant used a small red mechanical object to touch the outside of her vagina. There is no other evidence regarding the use of a red object to touch her. Although the minor told the SAFE interviewer that defendant touched her vagina with "mechanicals" 62 times, the minor did not say defendant used a red object to touch her vagina on more than one occasion. On this record, there is no substantial evidence that defendant used a red object more than once to touch the minor's vagina. The conviction on count eight must be reversed and the sentence on that count must be vacated.

## VII

Defendant further argues that some of his convictions for using a minor to pose for pornography must be reversed because certain pairs of photographs do not depict different poses.[5] Counts twelve, thirteen, eighteen, nineteen, twenty, twenty-two,

---

[5] We do not address a claim relating to count twenty-four in sections VII and VIII of defendant's opening brief because the claim is not supported by argument. (*People v.*

15

twenty-three, twenty-seven and twenty-nine charged defendant with a violation of section 311.4, subdivision (c). That section says a person who knowingly uses a minor to engage in "posing or modeling" for any image involving sexual conduct is guilty of a felony. Defendant identifies certain pairs of photographs[6] and contends they do not depict "an act of posing or modeling separate from the charged act immediately preceding it." We conclude section 311.4, subdivision (c) does not impose a requirement that each photograph involve a substantially different pose.

In *People v. Shields* (2011) 199 Cal.App.4th 323 (*Shields*), a defendant was convicted of three counts of violating section 311.4, subdivision (c) based on photographs he took of a seven-year-old girl. (*Id.* at pp. 325, 328-329.) The defendant took the photographs on the same occasion but created three different images involving penetration of the girl's vagina, masturbation, and nudity. (*Id.* at pp. 326, 328.) The defendant argued on appeal that the production of multiple photographs involving the same victim on the same occasion involved only one section 311.4, subdivision (c) violation. (*Id.* at pp. 330-331.) But the court in *Shields* held that the plain language of section 311.4, subdivision (c) authorized a conviction for each photograph. (*Shields, supra,* 199 Cal.App.4th at p. 331.) The court added that interpreting section 311.4, subdivision (c) to authorize multiple convictions for multiple photographs advances the legislative purpose of section 311.4. (*Shields, supra,* 199 Cal.App.4th at p. 332.) "When a person creates multiple photographs of child pornography, the person adds to the market more than the person who creates one photograph of child pornography. Each additional photograph further exploits the minor victim, and the Legislature clearly

---

*Jones, supra,* 17 Cal.4th at p. 304.) Defendant may have inadvertently included count twenty-four in the headings to sections VII and VIII of the opening brief; the headings to those sections in defendant's reply brief do not reference count twenty-four.

[6] Images 544 and 545; 550 and 551; 551 and 552; 552 and 553; 554 and 555; 555 and 556; 559 and 560; 562 and 563; and 543 and 544.

intended to prevent that exploitation by criminalizing its creation. The Legislature's attempt to end the exploitation of children by criminalizing the creation of each item of child pornography can be contrasted to the possession of child pornography." (*Ibid.*)

Based on our examination of the photographs in this case, we conclude defendant committed separate violations of section 311.4. No photograph challenged by defendant is a copy of another challenged photograph; each photograph is different.

The pairs of photographs challenged by defendant support separate convictions.**7**

## VIII

Defendant also contends some of the sentences for using a minor to pose for pornography must be stayed pursuant to Penal Code section 654 because the photographs do not depict different poses.

The trial court imposed consecutive sentences on the convictions for counts twelve, thirteen, eighteen, nineteen, twenty, twenty-two, twenty-three, twenty-seven and twenty-nine [using a minor to pose for pornography], finding that the crimes in those counts were independent of one another, having occurred at different times and separate places. None of the imposed sentences were stayed.

Defendant claims section 654 requires those sentences to be stayed because the evidence does not demonstrate separate acts punishable under section 311.4, subdivision (c). We rejected the premise of defendant's claim in the preceding section. But defendant also argues that section 654 bars multiple punishments on those counts because the act upon which each count is based did not involve a separate intent and objective, and the predicate photographs were taken close in time, with no opportunity for defendant to reflect on his conduct.

---

**7** We express no opinion about the application of section 311.4, subdivision (c) to other forms of media, such as a motion picture or video of a single session involving child pornography, as such facts are not presented here.

17

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Although the statute refers to "an act or omission," it is well settled that section 654 applies to a course of conduct which constitutes an indivisible transaction. (*People v. Perez* (1979) 23 Cal.3d 545, 551 (*Perez*).) "Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]" (*Ibid.*) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Ibid.*, fn. omitted.)

A defendant's intent and objective are factual questions for the trial court. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) We review the trial court's express and implicit factual findings in imposing multiple punishment for substantial evidence. (*Ibid.*) We view the record in the light most favorable to the trial court's findings and presume the existence of every fact the trial court could reasonably deduce from the evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Substantial evidence supports the trial court's finding that the challenged crimes are independent of one another. Each violation of section 311.4, subdivision (c) was complete -- i.e., defendant used the minor to pose for a pornographic photograph -- before the next section 311.4, subdivision (c) violation occurred. The photographs also show a difference in setting, attire, pose, focus, or use of props. Defendant was not punished for committing a single act.

18

In his reply brief, defendant cites *People v. Hertzig* (2007) 156 Cal.App.4th 398 (*Hertzig*) and *People v. Manfredi* (2008) 169 Cal.App.4th 622 (*Manfredi*) for the proposition that separate clicks of the camera do not, without more, establish separate intents and objectives. However, *Hertzig* and *Manfredi* involve convictions for possession of child pornography, a crime distinguishable from production of child pornography. (*People v. Haraszewski* (2012) 203 Cal.App.4th 924, 945; *People v. Shields, supra*, 199 Cal.App.4th at p. 332.) And *Hertzig* and *Manfredi* do not discuss the application of section 654.

Defendant further argues that he could not have entertained a separate intent and objective as to each photograph because the photographs were taken in rapid succession. But even if a defendant commits multiple acts with the same objective, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11; *Perez, supra,* 23 Cal.3d at p. 553; see also *People v. Harrison* (1989) 48 Cal.3d 321, 325-326, 335-338; *People v. Trotter* (1992) 7 Cal.App.4th 363, 366-368; *People v. Clair* (2011) 197 Cal.App.4th 949, 959-962.)

Here, the challenged convictions are based on separate and distinct acts by defendant. Although the interval between the taking of each photograph is short, the trial court implicitly concluded that defendant had an opportunity to reflect between the taking of each photograph but nevertheless elected to repeat his crime. (*People v. Trotter, supra,* 7 Cal.App.4th at p. 368.) This is especially true where there is a change in the setting of the photographs, in the minor's attire, in the focus of the photograph, or in the employment of different props.

The trial court was not required to stay the challenged sentences pursuant to section 654.

IX

Defendant next claims additional sentences must be stayed pursuant to section 654 because they are based on the same conduct.

A

Defendant says multiple sentences were improperly imposed on counts two, five and six based on the same act. Count two is based on the act depicted in a photograph showing a green sex toy penetrating the minor's labia. That act occurred on June 10, 2008, when the minor was eight years old.

Counts five and six allege that defendant used a green sex toy to touch the minor on two occasions. As we have explained, the record contains substantial evidence of two occasions of touching involving a green sex toy. But one of those acts is depicted in the photograph taken on June 10, 2008. Thus, the sentence imposed on count six must be stayed pursuant to section 654, because defendant cannot be punished twice for the act with the green sex toy he committed on June 10, 2008. (*People v. Siko* (1988) 45 Cal.3d 820, 823, 826.)

The Attorney General contends there was evidence of multiple acts with a green sex toy, citing the minor's statement to the SAFE interviewer that defendant touched her vagina with "mechanicals" 62 times. But the mother testified that she owned various sex toys, including the green one shown in the June 10, 2008 photograph, a couple of silver ones, a red one, "black beads" and one she kept in a velvet bag. And the minor did not say defendant used the green sex toy on more than two occasions.

B

Defendant also claims the sentence on count eleven [using a minor to pose for pornography] constitutes double punishment for the same act alleged in count two [sexual penetration] and in counts five and six [lewd and lascivious conduct]. The penetration of the minor's vaginal opening by a green sex toy, depicted in the June 10, 2008 photograph, is the conduct supporting the count eleven conviction. Because the same act

20

of sexual penetration is the predicate for count two, the sentence imposed on count eleven must be stayed.  (§ 654.)

C

Defendant next urges that counts one, twenty-six and twenty-seven are based on the same act.  Count one alleged that defendant committed an act of sexual penetration using a silver sex toy on September 1, 2008.  Counts twenty-six and twenty-seven alleged that defendant used a minor to pose for pornography based on image 559 and image 560, which depicted the penetration of the minor's vaginal opening with a silver sex toy on September 1, 2008.  The prosecution told the jury that count one was based on a photograph of the minor with the silver sex toy penetrating her vagina.  Because the act of sexual penetration that forms the basis for count one also establishes the conduct for the convictions on counts twenty-six or twenty-seven, the sentence imposed on count twenty-seven must be stayed.  (§ 654.)

D

The same analysis compels the conclusion that the sentence imposed on count thirty-one [using a minor to pose for pornography] must be stayed pursuant to section 654.[8]  The conviction on count nine [lewd or lascivious conduct] was based on image 565, which was also the basis for the conviction on count thirty-one.

We will direct the trial court to stay the sentences imposed on counts six, eleven, twenty-seven and thirty-one.

X

Defendant claims there is insufficient evidence to support the count thirty-one conviction for using a minor to pose for pornography, because that charge was based on a

---

[8]  The parties misidentify the count based on image 565 (two fingers spreading the vaginal opening of a girl) as count thirty-two.  Counts nine and thirty-one are the counts predicated on image 565.

21

blurry image of an arm. The Attorney General agrees with defendant, but we conclude reversal is not required.

The count thirty-one conviction was based on image 565, the top photograph shown on page 12 of People's exhibit 16. The image depicts two fingers spreading the vaginal opening of a girl. The grandmother identified defendant's fingers in the photograph.

Although count thirty-eight was based on image 564, a blurry image of what appears to be a tattooed arm, that count was dismissed when the People filed a first amended information.

Defendant's contention lacks merit.

## DISPOSITION

The judgment is modified to reverse defendant's count eight conviction for lewd and lascivious conduct, to vacate the sentence imposed on that count, and to stay the sentences imposed on the count six conviction for lewd and lascivious conduct and the counts eleven, twenty-seven, and thirty-one convictions for using a minor to pose for pornography. The judgment is otherwise affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the judgment as modified, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

                                                 MAURO            , J.

We concur:

         NICHOLSON        , Acting P. J.

            HULL             , J.