[No. F004845. Fifth Dist. Mar. 5, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES HUGH INGLE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Kent A. Barkhurst, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**REID, J.**\*—Appellant was convicted by jury verdict of robbery in violation of Penal Code section 211, the jury expressly finding that he had personally

---

\*Assigned by the Chairperson of the Judicial Council.

used a firearm during the commission of the offense within the meaning of Penal Code section 12022.5. Allegations that he had previously been convicted of a serious felony (Pen. Code, § 667) and had served a prior prison term (Pen. Code, § 667, subd. (b)) were found to be true based upon appellant's admissions. He was furthermore convicted by guilty plea of a violation of Penal Code section 12021, a felon in possession of a concealable firearm.

On October 4, 1984, the trial court stayed imposition of sentence on the felon in possession of a firearm charge and sentenced appellant to a total of 13 years for the robbery plus enhancements. He now appeals contending that the trial court committed prejudicial error: (1) in denying appellant's motion to exclude the eyewitness identification by the robbery victim because that identification occurred after the investigating officer had shown the witness a video recording made during the robbery; and (2) in refusing to give a "pin-point" eyewitness identification instruction requested by appellant. For the reasons discussed hereinafter, we reject appellant's contentions and affirm the judgment.

## FACTS

On May 28, 1984, Glenda Stalcup was working as a clerk at the Palms Liquor Store on South Union Avenue in Kern County. It was her second day on the job and she was the only employee in the store.

Sometime between 8 and 9 p.m., while Ms. Stalcup was waiting on a woman customer, a man entered the store and walked over to the Pepsi display where he picked up a six-pack carton containing four 16-ounce bottles of Pepsi Cola. He walked up to the counter and placed the container by the register. The woman whom Ms. Stalcup had been helping then told the man to go ahead but the man declined saying he was not done yet. He then walked back toward the location of the beer.

After the woman customer left, the man returned to the counter where Ms. Stalcup was standing. He pulled out a handgun, pointed it at Ms. Stalcup and told her he wanted all of the money. Because she was nervous, Ms. Stalcup could not at first get the cash register open. When she was finally able to open the cash register drawer, she handed the man approximately $265 in currency. He took the money, picked up the container with four bottles of Pepsi and left, telling Ms. Stalcup as he did so to go to the back of the store.

After the robber had left, Ms. Stalcup paged the owner who lived directly behind the store and he, in turn, called the sheriff. Deputy Al McClellen

responded to the call and took a description of the robber from Ms. Stalcup who stated that the robber had been wearing a striped, short-sleeved shirt. Deputy McClellen also took possession of a videotape recording of the robbery made by one of the store's video surveillance cameras. (The man depicted in the videotape wore a plain shirt.)

On June 14, 1984, Deputy Sheriff Rocky Lacertoso called Ms. Stalcup at the Palms Liquor Store to arrange for her to view a photo lineup he had compiled after viewing the videotape. In his conversation with Ms. Stalcup he told her that he would have the videotape with him at the time he showed her the photo lineup.

Upon his arrival at the Palms Liquor Store on June 14, 1984, Deputy Lacertoso admonished Ms. Stalcup that she was under no obligation to pick anybody in the photo lineup, that the person who robbed her might or might not be in the lineup and that she had to be absolutely sure of her identification of the robber if she did make an identification. Ms. Stalcup then asked to see the videotape prior to viewing the photo lineup because she didn't "want to pick somebody who didn't do anything." She was shown the tape and then picked appellant's photo from the photo lineup. She subsequently identified appellant as the robber both at the preliminary hearing and at trial.

Prior to commencement of trial on September 4, 1984, the trial court received evidence and argument in support of appellant's noticed motion to exclude the in-court identification of Glenda Stalcup "on the grounds that the videotape which was shown to said witness/alleged victim was impermissibly suggestive and gave rise to a likelihood of irreparable misidentification thereby denying to the [appellant] due process of law."[1] The evidence presented and considered by the court consisted of the testimony of Glenda Stalcup and Deputy Lacertoso and the two pieces of photographic evidence involved. At the conclusion of the hearing the court denied the motion without indicating the basis for its ruling.[2]

---

[1]Although it may have been implicit in the argument presented by appellant in support of his motion, the motion did not expressly seek to exclude evidence of the photo lineup identification itself. (Evid. Code, § 1238.)

[2]In the course of viewing the videotape, the trial judge made certain comments tending to show that he held the opinion that the videotape clearly identified appellant as the robber. Those comments were:

"THE COURT: I will sit here and we'll run the film. There's your client.

"MR. CATER [defense counsel]: That's why we're not watching in front of the jury.

"THE COURT: Is this it?

"MRS. RYALS [district attorney]: We need to run it faster. Stop going slow.

"THE COURT: That's a good picture of him. He's trying to hide from the camera. He

In the testimony which she gave at the motion hearing and in the testimony which she gave at the trial before the jury, Ms. Stalcup was positive in her statement that her identification of defendant in the photo lineup and in court were based entirely upon her independent recollection of the events occurring on the night of the robbery and that she was not aided or influenced by her prior viewing of the videotape. She did acknowledge that the videotape revealed one error in the description of the robber which she gave Deputy McClellen, but nonetheless testified that her recollection was clear as to other details of her identification and that she would have been able positively to identify defendant from the photo lineup and in the courtroom even if she had not seen the videotape portrayal of the robbery.[3]

The People's evidence at trial consisted of the testimony of Glenda Stalcup, Deputy Sheriffs Rocky Lacertoso and Al McClellen, the videotape and the photo lineup. The photo lineup, and the testimony concerning Ms. Stalcup's identification of appellant from that lineup, were received in evidence without objection as independent evidence of identity. (Evid. Code, § 1238; *People* v. *Cook* (1967) 252 Cal.App.2d 25 [60 Cal.Rptr. 133].)

In response to the People's case, the appellant offered an alibi defense consisting of three witnesses, each of whom testified that appellant was at a swimming pool party in Oildale from 5 p.m. on May 28, 1984, until 2 a.m. the next morning. Specifically, Stanley Bess, at whose home the party allegedly occurred, testified that he was present at all times during the party and that appellant did not leave the party even for a short time. His testimony was corroborated by that of his wife, Shelly Bess, who did, however, indicate that she left the party on one occasion about 10 p.m. to go to the store. Finally, Linda Kilbert, appellant's girlfriend, testified that she came

---

knows there's a camera on him. There's the gun.

"EQUIPMENT OPERATOR [unidentified]: I don't remember anymore.

"THE COURT: Go get the jurors, 35.

"EQUIPMENT OPERATOR: Do you remember anymore?

"MR. CATER: I think that's it.

"THE COURT: Motion denied."

While the foregoing excerpt from the reporter's transcript would lead to a belief that there was no ambiguity or uncertainty in the videotape portrayal of appellant as the robber, the parties themselves obviously felt that the videotape was not conclusive on the question. This view of the evidence is supported by our own independent review of the videotape and the photo lineup.

[3]As noted earlier, Ms. Stalcup told Deputy McClellen that the robber wore a short-sleeved striped shirt, whereas the videotape clearly showed that his shirt was plain. Ms. Stalcup explained her error on the basis that the woman customer on whom she was waiting when the robber entered the store was wearing a striped short-sleeved shirt and that this customer reentered the store and was present immediately following the robbery. According to Ms. Stalcup, it was the fact of seeing this shirt immediately before and immediately after the robbery that caused her confusion. The videotape does confirm Ms. Stalcup's testimony concerning the garment worn by the customer.

to the party with appellant and was with him at the party throughout the evening except for one 10-minute period when she went to the corner liquor store with Shelly Bess. (The distance between the Bess home and the Palms Liquor Store was variously measured by an investigator for the public defender's office as between 7 and 9.4 miles depending upon whether one drove the shortest or the fastest route.)

The taking of evidence, the argument of counsel, and the court's instructions to the jury all occurred on the afternoon of September 5, 1984, and consumed less than three hours total time. At 4:15 p.m. on that date, the jury retired and commenced its deliberations. After having done so, it expressed a desire to view the videotape, and arrangements were made to have the videotape player present for that purpose at 9:30 a.m. the next morning. The court thereupon declared a recess until that time.

Neither the reporter's nor the clerk's transcripts expressly indicate whether the jury viewed the videotape at 9:30 a.m. September 6, 1984, when the court convened. Presumably it did so and then resumed its deliberations. At 10:55 a.m. the jury returned to the courtroom with its verdict, which was read and recorded in the minutes of the court. As indicated at the outset, the verdict found the appellant guilty of robbery as charged in count one of the information and further expressly found that appellant had personally used a firearm within the meaning of section 12022.5 of the Penal Code. The total time of jury deliberations in reaching the verdict appears to have been slightly in excess of two hours.

DISCUSSION

I.

THE PRELINEUP IDENTIFICATION VIEWING OF THE
VIDEOTAPE RECORDING OF THE ROBBERY.

■ It is well-established that a pretrial lineup procedure that is unnecessarily suggestive and conducive to "irreparable mistaken identification" denies a defendant due process if a subsequent in-court identification is made which is not wholly free of the taint of the unfair lineup. (*People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336]; *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967].) ■ Conversely, an eyewitness identification at trial following a pretrial identification from a photo lineup is not precluded unless the photographic identifi-

cation procedure is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. (*Simmons* v. *United States, supra; People* v. *Lawrence* (1971) 4 Cal.3d 273 [93 Cal.Rptr. 204, 481 P.2d 212]; Witkin, Cal. Evidence (2d ed. 1984 supp.) § 905A-6, p. 510.)

 Appellant contends that the viewing of the videotape of the robbery in progress by the victim/witness prior to her identification of appellant from a photo lineup was unnecessarily suggestive and denied him due process. Specifically, appellant asserts: "It is clear that the witness identification of appellant from the photo display was not based on her independent recollection of the robbery. Instead, she was simply matching the likeness from the videotape to the group of photos that the police officer had chosen. The effect of such an identification is to improperly substitute a camera and film for human eyesight and memory. An eyewitness who makes her identification from a source other than her own memory or notes is no longer an eyewitness, and her identification cannot be considered sufficient to sustain a conviction."

Appellant's statement "that the witness' identification of appellant from the photo display was not based on her independent recollection of the robbery" flies in the face of the unequivocal contrary testimony of the witness at the hearing of appellant's motion to exclude the in-court identification. It is true enough that the trial court failed to give a reason for denial of appellant's motion to exclude, and it is thus impossible to know precisely what weight the trial court gave to Ms. Stalcup's testimony on the issue. ██ ██ ██ ██ Nonetheless, by denying appellant's motion, and by thereafter receiving evidence at trial of the pretrial photo lineup identification as independent evidence of identity, the trial court clearly found that the procedure was not unnecessarily suggestive or fundamentally unfair.[4]

---

[4]The procedure for determining the admissibility of in-court identifications in cases such as this is set forth in *People* v. *Cooks* (1983) 141 Cal.App.3d 224, 305-306 [190 Cal.Rptr. 211] as follows: "When a defendant challenges the fairness of a pretrial identification, the defendant has the initial burden of establishing that the pretrial identification was suggestive or unfair. [Citation.] If the defendant sustains his burden of showing that the pretrial identification was suggestive, the in-court identification need not necessarily be excluded if the People can demonstrate that the in-court identification was otherwise reliable. [Citations.] In California, the burden shifts to the People to prove by clear and convincing evidence that the in-court identifications were based on the witness' observations of the accused at the scene of the crime, that is, independent of the suggestive pretrial identification . . . ."

Because the trial court determined that the photo lineup identification procedure in this case did not preclude admitting the photo lineup into evidence, it necessarily found that appellant had not met his burden to establish unfairness, and further found that the prosecution was not required to prove by clear and convincing evidence that the in-court identification was purged of any taint associated with the photo lineup procedure.

■ It has been recognized that permitting one eyewitness to a crime the opportunity to observe another eyewitness make a photo lineup identification before he himself is asked to make his own identification is unnecessarily suggestive and fraught with the potential for irreparable misidentification. (*People* v. *Vanbuskirk* (1976) 61 Cal.App.3d 395 [132 Cal.Rptr. 30].) Although such witness may not be expressly directed to select the same picture as the other witness, the situation exerts its own pressure that he do so. (*People* v. *Vanbuskirk, supra.*) Here, appellant contends that the video camera is another witness, and that permitting Ms. Stalcup to view the videotape recording is tantamount to having her substitute the recollection of another witness for her own.

Appellant's analogy making the video camera another witness to the crime is flawed in a fundamental sense. The camera is not subject to the frailties of the human condition. It has no bias, motive, intent or emotional response with respect to events that it views. Its memory is not affected by intervening life experiences that intrude between its initial recording of an event and a later viewing of the picture it has captured on tape. While it has its own limited perspective and while the quality of its product is variously affected by the circumstances under which it operates, the imperfections and distortions are in the normal case readily perceived and understood. In short, unlike the recollections and descriptions of a human witness, the recorded memory of the video surveillance camera has little serious potential to mislead. Indeed, its opposite potential to correct and enhance the reliability of an eyewitness identification in cases like the present would appear greater than its potential to cause an incorrect result. Accordingly, we find nothing inherent in the procedure with which we deal in this case that can be said to be unnecessarily suggestive and conducive to irreparable mistaken identification.

■ It is now clearly established that lay opinion testimony concerning the identity of a robber portrayed in a surveillance camera photo of a robbery is admissible where the witness has personal knowledge of the defendant's appearance at or before the time the photo was taken and his testimony aids the trier of fact in determining the crucial identity issue. (*People* v. *Mixon* (1982) 129 Cal.App.3d 118 [180 Cal.Rptr. 772]; *People* v. *Perry* (1976) 60 Cal.App.3d 608 [131 Cal.Rptr. 629].) Where the photo is unclear, or the defendant's appearance has changed between the time the crime occurred and the time of trial, or where for any reason the surveillance photo is not conclusive on the identity issue, the opinion testimony of those persons having knowledge based upon their own perceptions (Evid. Code, § 800, subd. (a)) of defendant's appearance at or before the time the crime occurred is admissible on the issue of identity, and such evidence does not usurp or improperly invade the province of the trier of fact. (*People* v. *Mixon, supra; People* v. *Perry, supra.*)

In both *People* v. *Mixon, supra,* and *People* v. *Perry, supra,* the victim/witness to the crime was unable to make a positive identification of defendant because of an inadequate opportunity to view the defendant's features when the crime occurred. Since the victim/witness in each case had no prior or independent knowledge of defendant upon which to base an opinion of identity, he was unable to identify defendant either from the surveillance film or from photo and in-person lineups. Instead, the opinion evidence of identity in each case came from police officers who had not witnessed the crime but who were familiar with defendant prior to the crime.

In the present case, the videotape recording of the robbery was independent evidence that a robbery occurred and of the perpetrator's identity. However, while the person depicted as the robber in the recording bore a strong resemblance to defendant, the quality of the videotape was not sufficient to establish his identity conclusively. Under such circumstances, it was entirely appropriate for the trial court to permit the robbery victim to give opinion testimony, based upon her personal observations and perceptions at the time the robbery occurred, that the person portrayed as the robber in the videotape was the defendant. (*People* v. *Mixon, supra.*) Unlike the case in *Mixon* and *Perry,* the victim/witness here had an adequate opportunity to view defendant's physical features during the robbery and to relate her observations and recollections to both the video picture and the defendant's person. Because of this, Ms. Stalcup's identification testimony satisfied the dual requirements of *Mixon* and *Perry* "(1) that the witness testify from personal knowledge of the defendant's appearance at or before the time the photo was taken; and (2) that the testimony aid the trier of fact in determining the crucial identity issue." (*People* v. *Mixon, supra,* 129 Cal.App.3d 118, 128.) ▮ Since we further conclude that the photo lineup procedure in this case was not unnecessarily suggestive or conducive to irreparable mistaken identification, we find no error in the trial court's admission into evidence of any of the identification evidence.

II.*

### THE TRIAL COURT'S REFUSAL TO GIVE A PINPOINT INSTRUCTION RELATING REASONABLE DOUBT AND EYEWITNESS IDENTIFICATION.

. . . . . . . . . . . . . . . . . . . . . .

*See footnote on page 505, *ante.*

The judgment is affirmed.

Franson, Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied March 26, 1986, and appellant's petition for review by the Supreme Court was denied May 28, 1986.