Filed 6/27/13  P. v. Beasley CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTHONY BEASLEY,<br><br>    Defendant and Appellant. | F064365<br><br>(Super. Ct. No. F10900213)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Edward Sarkisian, Jr., Judge.

Stephen Gilbert, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Wiseman, Acting P.J., Poochigian, J. and Franson, J.

Defendant and appellant Anthony Beasley contends the trial court abused its discretion in failing to exclude certain evidence pursuant to Evidence Code section 352 and that the totality of evidence is insufficient to sustain one of his attempted robbery convictions.  Neither contention has merit; we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Viewed most favorably to the jury's verdict (*People v. Avila* (2009) 46 Cal.4th 680, 701), the evidence at trial showed the following:

At about 2:30 p.m. on December 18, 2009, David Medina was standing in front of McKinley Market, where he worked as a clerk.  He saw a blue car go by with three men in it.  Minutes later, two of the men, defendant and Cleshawn Brown, came around the corner of the store.  Medina recognized defendant from serving in prison with him.  When he told defendant they had worked in the prison kitchen together, defendant replied, "No, you got the wrong guy."  Defendant asked whether the store cashed checks and Medina said he could not unless "the boss" was present.  Defendant and Brown entered the store.  Medina walked to the corner of the store and saw the blue car, now containing only one person, at the very back of the store parking lot.  When Medina went back in the store, defendant said he wanted to buy some gloves that were behind the counter.  Medina, by this time sensing that something was wrong, said he was still on his break but that "Bob" would help defendant.  Medina called to the rear of the store for Bob, even though he knew no one else was in the store.  Shortly afterward, the two men left the store.  Medina followed the men out.  When they turned the corner, they discovered the blue car was no longer there; they appeared confused and continued walking.  Brown testified against defendant.  He said defendant told him he had a way to make some quick money by "do[ing] a lick" at the store, which meant robbing or stealing from it.  He said the men determined Medina knew they were planning to rob the store, so they left.

About 3:00 p.m., defendant and Brown entered Discount Liquor and Foods, about one and a half miles east on McKinley.  Inderjit Singh was working at that store.  Defendant pointed a gun at Singh, who was behind the counter, and demanded money.  He threatened to shoot Singh.  Singh picked up a knife and defendant and Brown ran into a corner of the store.  Singh traded the knife for a baseball bat and moved toward the front door of the store.  While Singh was trying to open the door, defendant shot him in the head.  The bullet creased the skin above Singh's ear.  Brown shouted "Don't shoot -- don't shoot him.  Don't shoot him."  The men fled as Singh tried to telephone for help.  They fled in a blue car.  A few minutes later Medina, once again standing in front of McKinley Market, saw the blue car, now containing the same three men he had seen earlier, pass by the store at a high rate of speed.

Defendant was tried on one count of attempted murder (Pen. Code, §§ 664, 187, subd. (a)) and two counts of attempted second degree robbery (Pen. Code, §§ 664, 211).  The jury found defendant guilty of the two attempted robbery counts, found true allegations that defendant personally discharged a firearm (Pen. Code, § 12022.53, subd. (c)) and personally used a firearm (*id*., subd. (b)) during the commission of one of the attempted robberies.  The jury was unable to reach a verdict on attempted murder and an associated enhancement allegation; the court declared a mistrial as to that count and enhancement.  Defendant admitted certain prior conviction allegations.  At a subsequent sentencing hearing, the court sentenced defendant to an operative prison term of 25 years eight months.

## DISCUSSION

A.  *Additional Facts*

Medina, testifying as a prosecution witness, was impeached with his own felony conviction.  He also testified concerning his prior interaction with defendant as the basis for his recognition of defendant at the scene.  As noted above, Medina testified that defendant denied knowing him and, during cross-examination by defense counsel,

3.

counsel sought to cast doubt on Medina's identification of defendant, pointing out through questioning that Medina did not know defendant's name and that there were hundreds of people in Medina's dormitory at the prison. Brown then testified that defendant was with him at both stores. A subsequent prosecution witness was Philip Mounts, who identified himself as a parole agent supervisor. He testified that he had been "supervising [defendant] closely," seeing him at least weekly "the last time I was supervising him." Mounts testified that he had been shown still photographs taken from a security video at McKinley Market and that he recognized defendant as one of the persons in the photographs. Mounts also had defendant's prison record with him in court and, based on that record, testified that defendant was at the two prisons where Medina said he had seen defendant, and that the two men were at the prisons at the same time. Prior to this testimony by Mounts, defense counsel had moved in limine to exclude the testimony on the basis it was unduly prejudicial under Evidence Code section 352. The court denied the motion.

B. *The Court Did Not Abuse Its Discretion*

Defendant does not contend allowing Medina's testimony about working with defendant in prison was error (see *People v. Beamon* (1973) 8 Cal.3d 625, 632), nor does he contend allowing Mounts's testimony from the prison records about the dates of defendant's incarceration with Medina was error. His contention is that Mounts's testimony about the basis for his recognition of defendant in the surveillance tape was unduly prejudicial: "Whatever slight value was added by Mounts' identification was clearly outweighed by the prejudice inherent in his testimony." Defendant contends: "Evidence of uncharged acts cannot be used to prove something that other evidence showed was beyond dispute; the prejudicial effect of the evidence of [defendant's] parole status outweighs its probative value to prove that he was the man depicted in the video."

As relevant here, the issue under Evidence Code section 352 is whether evidence otherwise admissible under the Evidence Code must be excluded because the evidence

4.

creates a "substantial danger of undue prejudice." The question is whether the evidence prompts an emotional reaction against the defendant that tends to cause the trier of fact to decide the case on an improper basis. (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1277.) Significantly, in this case, the evidence that defendant had been on parole did not involve testimony about crimes more inflammatory than the charged offenses—in fact, the testimony disclosed nothing about the reason defendant was on parole. (See *People v. Daniels* (2009) 176 Cal.App.4th 304, 316 [listing factors for undue prejudice, including "'inflammatory nature of the uncharged conduct'"].) The jury merely learned the rather generic fact that defendant was on parole at some point. That fact had no prejudicial effect in the unique facts of this case, because the jury had already learned from other evidence not contested on this appeal, that defendant had been in prison with Medina. Thus even though, in the abstract, the fact that a defendant is on, or has been on, parole, might be prejudicial, here the fact added nothing to the evidence already before the jury and the prejudicial effect was very low, if it existed at all. Accordingly, the trial court did not abuse its discretion in concluding any small prejudicial effect of the parole evidence did not outweigh the probative value of the testimony in establishing the basis for—and credibility of—Mounts's identification of defendant from the surveillance video. (See, e.g., *People v. Hollie, supra,* 180 Cal.App.4th at p. 1277; see also *People v. Ingle* (1986) 178 Cal.App.3d 505, 513 [testimony of lay witness concerning identity of person in surveillance video].)

      C. *Sufficiency of the Evidence*

Defendant contends there was insufficient evidence of intent to support the jury's conclusion that he was guilty of attempted robbery of McKinley Market. He contends Brown's testimony was the only direct evidence of their intent upon entering the store, and that testimony was that they intended to rob or steal, not that they intended to rob the store.

Our standard of review is well-settled:  In reviewing a judgment for substantial evidence, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  This standard applies whether direct or circumstantial evidence is involved.  (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

In this case, as respondent points out, the intended victim of the robbery, Medina, happened to be outside the store when defendant arrived.  Defendant tried twice to lure Medina back inside—and specifically to lure him into returning to the cash register area of the store.  If defendant had intended merely to shoplift, defendant would have been content to have Medina outside.  Thus, given Brown's testimony that they went to the store intending to either rob or steal, this circumstance reasonably tends to negate the latter intent.  In addition, half an hour after entering McKinley Market, defendant and Brown entered Discount Liquor and Foods, where they confronted a more favorable situation, with the clerk standing at the cash register.  Defendant pulled a gun and demanded money from the clerk.  This overt attempt to rob the second store within a short time after the events at McKinley Market is further circumstantial evidence of defendant's intent on the earlier occasion.  (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 402; *People v. Beamon, supra,* 8 Cal.3d at p. 632; *People v. Griffin* (1967) 66 Cal.2d 459, 464-465.)  This evidence amply supports the jury's verdict on the McKinley Market attempted robbery charge.

## DISPOSITION

The judgment is affirmed.

6.