Filed 5/5/15  P. v. Boungnarith CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>AARON BOUNGNARITH,<br><br>      Defendant and Appellant. | A140610<br><br>(Alameda County<br>Super. Ct. No. C171690) |

A jury found defendant Aaron Boungnarith guilty as charged of two counts of second degree robbery while impersonating a peace officer (Pen. Code, §§ 211, 538d). Defendant was sentenced to three years in state prison, that term to be served consecutive to a ten-year federal sentence.  The sole contention he advances on appeal is that the trial court committed prejudicial error when it granted the prosecution's in limine motion "to admit non-percipient witness identification," specifically allowing the witness to identify defendant in video surveillance.  We affirm.

## THE SETTING

The trial court's ruling must be evaluated solely on the basis of what information was before it at the time.  (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220; *People v. Welch* (1999) 20 Cal.4th 701, 739.)  Therefore, there is no need to summarize the evidence received at the ensuing trial.

The prosecution's moving papers below concisely stated the nature and background of the issue presented to the trial court:

"[T]he People seek to introduce testimony from Jantar Phun identifying the defendant as a participant in the June 23, 2012, and July 1, 2012 robberies of Magic Fingers Spa [the two charged offenses]. Ms. Phun was not a percipient witness to the [robberies], but rather identified the defendant through video surveillance.

"On July 12, 2012, San Mateo Police arrested Jantar Phun for participating in a robbery of a prostitution house. As a result, San Mateo Police contacted the Berkeley Police Department due to similar robberies in Berkeley. Sergeants Dave Lindenau and Frank Landrum responded to the San Mateo Police Department and interviewed Ms. Phun.

"During the interview Sergeants Lindenau and Landrum showed Ms. Phun four surveillance videos of robberies that occurred at the Magic Fingers Spa on June 18, 2012, June 23, 2012, July 1, 2012, and July 6, 2012. In the videos relating to the June 23, 2012, and July 1, 2012 robberies, Ms. Phun identified the defendant as one of the suspects. Ms. Phun also identified Que Bui as another suspect of the two robberies. Ms. Phun said that Que Bui also goes by the name Joseph. Ms. Phun said the defendant and Que Bui had been spending time together recently and discussed robbing massage parlors in Berkeley.

"During the interview Ms. Phun explained how she was familiar with the defendant's appearance. Ms. Phun described the defendant as a 'cousin' of her boyfriend. Ms. Phun said the defendant had long hair, a mustache and looked similar to her boyfriend Samay. Ms. Phun explained that she was familiar enough with defendant to know where he lived in Oakland and currently did not have a phone to be contacted. Moreover, Ms. Phun said that she had seen the defendant as [recently] as the night before she was interviewed by the Berkeley Police Department.

"In reviewing the video surveillance interview Ms. Phun was able to identify the defendant's distinctive walk and facial features. Additionally, Ms. Phun was able to distinguish the defendant from her boyfriend by his build and hair."

Phun testified at an evidentiary hearing pursuant to Evidence Code section 402 that she has known defendant for 15 years, "since we were kids" (i.e., "teenagers").

2

Defendant did not "look different" at the hearing than he did in June 2012. In 2012 she saw defendant "probably a couple of times a week," although they did "not really" interact. She saw defendant at the Oakland home of "Joseph." Phun spoke with Berkeley police officers "when I got caught for my case in San Mateo." They showed her video surveillance tapes. Phun subsequently spoke with the prosecutor and Inspector Foster. On both occasions Phun identified defendant as depicted on the tapes. At the hearing Phun was shown photographs (People's Exhibits 1 & 2) from the tapes which she identified as depicting defendant.

Phun testified on cross-examination that in 2012 she used "meth" every day. She supported this habit by stealing with her boyfriend, Samay Pomsouvanh, who looks a lot like defendant. When she called defendant a "cousin" of her boyfriend, this did not indicate a blood relationship, just that Samay and defendant were close friends. When asked if the man on the tapes was Samay, Phun initially told the Berkeley officers she could not make an identification from the video tapes. Phun concluded by testifying that she was "high" at the time she spoke with the Berkeley officers, and did not know who was depicted on People's Exhibits 1 and 2.

Inspector Foster testified that he met with Phun "last week" in the county jail. When shown People's Exhibits 1 and 2, Phun "immediately" identified the person depicted as defendant.

People's Exhibits 1 and 2 were received in evidence, as were "the surveillance tapes from the June 23rd and July 1st incidents," which the trial court reviewed. Defense counsel argued that Phun's testimony at trial would be unnecessary: "I think that an average person can make an identification from the video that the jurors are going to see. They don't need anybody else's opinion in forming their own as to whether or not the person depicted is Mr. Boungnarith or not." Counsel disagreed with the court's question whether Phun's testimony might be "useful to the jury to corroborate their own opinion," responding as follows:

"In this situation, no, it's not. And it's not for the very reason that the Court questioned Mr. Layton [the prosecutor] because there are several different opinions from

a witness who admits to being under the influence at the time that the opinion was offered, and who has an obvious interest, bias, or motive to lie at the time that the opinion was offered. So I think that the opinion . . . is virtually useless. And in fact, if the Court allows the opinion in, . . . I have a strenuous objection under [Evidence Code section] 352, because what we do is we create a mini-trial as to the believability, credibility of Ms. Phun, and then we end up comparing and contrasting Mr. Boungnarith's word versus Samay Pomsouvanh, who I think the testimony this morning was looks very similar to the defendant. And I think I know that the statement to the Berkeley police was such that she can't tell them apart on the video, so . . . [¶] . . . [a]llowing Ms. Phun's opinion truly muddies [the] water and creates a bunch of other issues that the Court doesn't have to do, because the video in and of itself is pretty darn clear. And . . . the complaining witness has viewed a photo array of Mr. Boungnarith and said yes, yes, absolutely. So we need an opinion of Ms. Phun for what?"

And counsel continued: "[I]t ends up portraying Mr. Boungnarith in a negative light, because this is somebody who he hangs around with, so we're ending up with a bit of guilt by association, if not a lot of guilt by association. [¶] And clearly when Ms. Phun testifies that her boyfriend looks like the defendant, again, we see that that comes back to a little bit of guilt by association. So, again, I don't believe that Ms. Phun's identification opinion particularly aids the trier of fact in determining the issue of ID in the crime, and it creates—I don't want to say insurmountably, but it creates grievous 352 issues based upon the time that it's going to take to get into Ms. Phun's criminal history, to get into the whole consistent/inconsistent statements, and we create a mini-trial by adding people to come in to impeach or support her prior testimony, however it comes out."

At the conclusion of argument, the court ruled as follows: "I do find that the witness has sufficient familiarity with Mr. Boungnarith that she could offer her opinion that Mr. Boungnarith is one of the persons in the June 23 and July 1 incidents as shown in the respective videos of those incidents. And that that familiarity was near the time of the portrayal of the videos occurred. The witness was familiar with enough to say that between the time she had last seen Mr. Boungnarith until today, he has not changed his

4

appearance. I do think that the evidence is strongly probative to corroborate evidence that the jury will see when it views the video, and to that extent . . . the testimony would aid the trier. Relative to the 352 issues, the question is whether the probative value strongly outweighs the cumulative nature to have testimony, and I don't [*sic*] find that it does nor do I find that is outweighed by the consideration of undue time. So she may testify at this trial."

## DISCUSSION

Defendant aims a number of arguments against this ruling. He does not renew his claim the testimony was not relevant, because it clearly was: "It is now clearly established that lay opinion testimony concerning the identity of a robber portrayed in a surveillance camera photo of a robbery is admissible where the witness has personal knowledge of the defendant's appearance at or before the time the photo was taken and his testimony aids the trier of fact in determining the crucial identity issue. (*People v. Mixon* (1982) 129 Cal.App.3d 118; *People v. Perry* (1976) 60 Cal.App.3d 608.) Where . . . for any reason the surveillance photo is not conclusive on the identity issue, the opinion testimony of those persons having knowledge based upon their own perceptions (Evid. Code, § 800(a)) of defendant's appearance at or before the time the crime occurred is admissible on the issue of identity, and such evidence does not usurp or improperly invade the province of the trier of fact." (*People v. Ingle* (1986) 178 Cal.App.3d 505, 513.)

Defendant does not claim the prosecution failed to establish the foundational requirements for admission, or that the trial court erroneously found those requirements satisfied. He does advance a number of arguments why the ruling cannot be sustained with reference to Evidence Code section 352.[1] His specific arguments are prefaced by

---

[1] In his reply brief, defendant asserts for the first time that the trial court's ruling is procedurally defective because "the trial court did not perform the required analysis" under section 352 because " 'the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value.' " (Citing *People v. Leonard* (1983) 34 Cal.3d 183, 187.) We reject this claim because it is untimely. (*People v. Tully* (2012) 54 Cal.4th 952, 1075.) Even if the claim had been preserved for review, we would reject

5

this general characterization: "Phun's testimony was cumulative on the central issue of identification, but that was the least of its deficiencies. Her testimony plunged the jury into a series of confusing and irrelevant issues: (1) her criminal record, activities, and associations, (2) her use of methamphetamine and its possible effects, and (3) her relationships with appellant and with Samay Pomsouvanh, whom she identified as her boyfriend. Moreover, her confusing and contradictory testimony created a highly prejudicial impression of appellant's association with a criminal network."

Under section 352, " '[t]he trial court has broad discretion both in determining the relevance of evidence and in assessing whether its prejudicial effect outweighs its probative value.' " (*People v. Jones* (2011) 51 Cal.4th 346, 373.) " ' " 'A trial court's decision to admit photographs under Evidence Code section 352 will be upheld on appeal unless the prejudicial effect of such photographs clearly outweighs their probative value.' " ' " (*People v. Mills* (2010) 48 Cal.4th 158, 191.)

Apart from the one use of the word "cumulative" quoted above, defendant does not develop any argument that Ms. Phun's testimony would be cumulative to other evidence of defendant's identity and participation in the charged robberies. The point thus requires no further consideration. (See Cal. Rules of Court, rule 8.204(a)(1)(B) ["Each brief must: . . . State each point under a separate heading or subheading summarizing the point, and support each point by argument, and . . . citation of authority"]; *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [reviewing court may disregard claims perfunctorily asserted without development and without clear indication they are intended to be discrete contentions].)

Defendant's specific arguments are that Phun's *trial* testimony about the identity of the man depicted on the videotapes was confusing, as was her *trial* testimony about her

its merits. The rule cited by defendant no longer applies. " '[A] court need not expressly weigh prejudice against probative value or even expressly state that it has done so, if the record as a whole shows the court was aware of and performed its balancing functions under Evidence Code section 352.' " (*People v. Hinton* (2006) 37 Cal.4th 839, 892.) This record does so show.

drug use, her *trial* testimony about Samay, and, lastly, her *trial* testimony "about her criminal record and criminal activities and her work as a police informant." It has already been established that the court's pretrial ruling cannot be overturned on the basis of evidence subsequently received at defendant's actual trial. (*Alcala v. Superior Court*, *supra*, 43 Cal.4th 1205, 1220; *People v. Welch*, *supra*, 20 Cal.4th 701, 739.) Defendant does not attempt to demonstrate, on the basis of what was known to the trial court at the time it ruled, that it was an abuse of discretion to grant the prosecution's in limine motion. Had defendant made such an attempt, it would not have prevailed.

"It is surely desirable to avoid confusing the issues or misleading the jury, but it is most difficult to conceive of relevant evidence . . . that can be condemned on these grounds alone." (1 Witkin, Cal. Evidence (5th ed. 2012) Circumstantial Evidence § 23, p. 387.) As already established, Phun's opinion evidence clearly did have relevance. (*People v. Ingle*, *supra*, 178 Cal.App.3d 505, 513; see also *People v. Larkins* (2011) 199 Cal.App.4th 1059, 1066-1067; 1 Witkin, Cal. Evidence, *supra*, Opinion Evidence, § 6, pp. 614-616.) Such "confusion" as can be discerned from Phun's testimony at the hearing is most likely the result of a less than perfect command of the English language and her hostility to her confinement and enforced presence at the hearing. Even conceding the existence of confusion in the witness, it would not nullify her testimony. (See, e.g., *People v. Rist* (1976) 16 Cal.3d 211, 216 ["Confusion, or lack of clarity and positiveness goes to the weight, not the admissibility of the testimony"]; *People v. Gonzales* (1968) 68 Cal.2d 467, 472 ["Lack of positiveness as to . . . identity went to the weight and not to the competency of the evidence"].)

Defendant's final argument is headed: "Phun's Testimony Created an Inference of Guilt By Association." However, what follows is pretty much a rehash of the earlier arguments, with particular emphasis on the issues of confusion—and again based on trial evidence. So, when defendant tells us that "Phun was connected with a criminal gang that included Samay, Quoc [Bui], and Eddie [Chung], and also included appellant," and that this gang "preyed on the helpless," particularly "sex workers in brothels, . . . some of them recent immigrants easily cowed by fake ICE or Homeland Security insignia," it is

7

immediately clear she is referring to a raft of matters never mentioned at the hearing.  For each and both of these reasons, defendant's final argument fails.

## DISPOSITION

The judgment of conviction is affirmed.


_____
Richman, Acting P.J.


We concur:


_____
Stewart, J.


_____
Miller, J.