Filed 4/28/21  P. v. Ingram CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDRE LAMONT INGRAM,<br><br>    Defendant and Appellant. | 2d Crim. No. B304158<br>(Super. Ct. No. 2019001072)<br>(Ventura County) |

A jury convicted appellant Andre Lamont Ingram of four counts of second degree robbery.  (Pen. Code, § 211.)  He was sentenced to eight years in prison, consisting of five years on the first count plus three consecutive one-year terms on the remaining counts.  Appellant contends the trial court abused its discretion by admitting a peace officer's lay opinion that the robbery suspect's voice on surveillance tapes and phone calls was that of appellant.  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND
## *Gas Station Robberies*

On July 29, 2018, at around 9:23 p.m., T.D. was working at the Shell Gas Station in Ventura when a man rushed in and pointed a gun at him. The man's face was covered from the bridge of his nose down. He was between five and a half to six feet tall.

T.D. complied with the man's demand to open the cash register. The man took the money along with T.D.'s cell phone.

On August 1, 2018, at approximately 9:55 p.m., B.F. was ending his shift at the Shell Gas Station in Camarillo. A man wearing a mask and a "hoodie" entered the area behind the cash register. He pointed a gun at B.F., grabbed the drawer to the open register, which contained $400 to $500, and then ran away. B.F. testified that the man had "darkish" skin and dark color eyes. A surveillance camera directly behind the register captured footage of the robbery, including the man's demand to "[o]pen the fuckin' register now."

On August 3, 2018, at around 11:20 p.m., B.M. was working at the Mobil Gas Station in Thousand Oaks when a masked man approached, pointed a gun at him and demanded that he open the cash register. The man took the cash and asked for the "coins register," which contained coins and some bills for change. When B.M. refused, the man searched the area and found the coins register. After he took the coins register, the man pointed the gun at B.M. and told him to take out his wallet and phone. B.M. complied, and the man took the wallet before rushing outside in the direction of the Motel 6 to the right of the gas station. B.M. locked the doors and called 911.

B.M. described the masked man as "[n]ot tall" and of "medium weight, not a heavy build." The man was wearing black shoes. B.M. also testified that he had some currency from India and $40 to $60 in his wallet.

*Oxnard 7-Eleven Robbery*

On August 9, 2018, at approximately 12:55 a.m., J.K. was working at a 7-Eleven in Oxnard. A man entered the store and pointed a silver gun at him. The man was wearing a gray "hoodie," black denim pants and black gloves. The hood covered the man's head and his face was covered with a black and white bandana from the bridge of his nose. The man was agile, slim and between five feet and eight inches to six feet tall.

The man told J.K. to open the register. After J.K. complied, the man told him to get on his knees before instructing him to open a second register. The man took $700 to $800 from the registers and then demanded J.K.'s wallet and cell phone. J.K. said he did not have a wallet. The man put his gun to J.K.'s neck and took his phone. He then ran outside. Surveillance video footage of all four robberies was played for the jury. None of the victims could identify the perpetrator.

*Perpetrator's Appearance and Cell Phone Location Data*

The same perpetrator was involved in the four robberies. He wore the same clothes during the robberies -- black jeans with bright silver zippers, plain black shoes and black gloves. During the three gas station robberies, the perpetrator wore a dark gray sweatshirt "hoodie" that was "turned inside out." In the 7-Eleven robbery, he wore a light gray sweatshirt. The perpetrator also used the same gun, which appeared to be a black and silver semi-automatic handgun with "a little brown on the handle."

3

Location data from Google established that a certain cell phone was at or around the gas stations during the three robberies. In addition, two e-mail accounts were logged into the phone during the robberies. One was andrelingram17@gmail.com." The second account had been deleted, but its search history showed searches for "Andre Lamont Ingram Jr. Ventura bank robbery" and "Andre Lamont Ingram Jr. Ventura bank" on October 4, 2018 as well as odd spellings of his name.

Another e-mail account logged into the identified cell phone belonged to K.S., who had been arrested on August 10, 2018 for "out-of-county warrants." K.S., a woman, did not fit the description of the male perpetrator. When she was arrested, K.S. was in a car with appellant.

The location data for K.S.'s e-mail account recorded the location of the three gas stations at around the time of the robberies. The search history for the e-mail account showed 100 searches, including searches for "Ventura gas station robbery, Thousand Oaks gas station robbery, Camarillo gas station robbery," "gas station robberies," "August gas station robberies in Thousand Oaks," "what you should know before robbing a bank," "[s]uccessful bank robberies with a note," "armed robbery in gas station in Thousand Oaks," and "[a]rmed robbery in Oxnard at 7-Eleven." While the searches were made over "a lengthy period," they continued even after K.S. was taken into custody and in the week following her arrest. The phone number provided by appellant during his arrest -- (707) 328-9394 -- was tied to the same cell phone linked to his and K.S.'s e-mail accounts.

4

*Physical Evidence from Appellant's Car*

On August 10, 2018, at around 9:15 a.m., appellant was investigated for a hit-and-run accident at a shopping center. K.S. had been arrested a few hours earlier. Appellant was sitting in the driver's seat of a white Mercedes.

Appellant was arrested when officers noticed a clear "baggie" on top of the center console containing a "white crystal-like substance." The substance appeared consistent with methamphetamine.

During the arrest, appellant referred to the white Mercedes as "my car." He informed the officer that he did not want the car to be towed and that the items inside the car belonged to him. During a search, the officers found a gun on the front seat. When Officer Eli Rebollar checked the gun, he realized it was an "Airsoft gun" that fired pellets made of plastic or metal. Officer Rebollar testified that to the untrained eye, the gun would appear real. The gun matched the one used in the four robberies. Officers also retrieved black gloves, black shoes, a dark gray sweatshirt and another lighter-colored sweatshirt that matched those worn by the perpetrator during the robberies. The center console contained $246.23 in cash plus currency from India.

Appellant's appearance, as recorded in his booking information, matched the physical description of the perpetrator, including his stature and complexion. Footage of the arrest from Officer Rebollar's body-worn camera was played for the jury.

*Admission of Voice Identification Testimony*

Defense counsel moved to exclude Sergeant Robert Yoos's opinion that appellant had received phone calls placed from jail between August 11 and August 14, 2018. Counsel requested an Evidence Code section 402 hearing to establish a foundation for

5

Sergeant Yoos's identification of "a voice on a phone as Andre Ingram."

Sergeant Yoos testified that he searched for and listened to calls made from jail from August 11 through August 14, 2018, to the (707) 328-9394 number provided by appellant during booking. He also listened to calls made by appellant from jail from September 9, 2019, through the date of trial, as well as "countless hours of calls for [appellant's] various custody stays." Sergeant Yoos estimated he had heard "upwards of 30 [hours] or more" of appellant's phone calls. He also watched the body-worn camera footage of appellant's arrest which included an audio recording of appellant's voice.

Based on the calls and footage, Sergeant Yoos identified appellant as the person who received the jail calls from August 11 through August 14, 2018 at the number (707) 328-9394. Sergeant Yoos also recognized appellant's voice in the surveillance video footage of the Shell and Mobil Gas Station robberies. Specifically, Sergeant Yoos compared the "nature of the voice and the mannerisms in which it's carried out."

On cross-examination, Sergeant Yoos acknowledged he had no special training in voice recognition but had 27 years of experience in "listening to various phone calls and wire operations and things like that."

The trial court overruled the foundation objection and permitted the testimony as "lay opinion." The court explained that Sergeant Yoos "is someone who's saying he's listened to this voice, he's established why he thinks he is able to recognize it and he's testifying that he did recognize it, and that's relevant evidence." Appellant challenges that ruling.

6

DISCUSSION

Evidence Code section 800 allows a witness to offer a lay opinion if the opinion is "[r]ationally based on the perception of the witness" and "[h]elpful to a clear understanding of his testimony."

California courts have long recognized the admissibility of lay opinion testimony involving voice identification. As stated in *People v. Sica* (1952) 112 Cal.App.2d 574, "it is clear that on the issue of identification of the participants in the conversations, testimony of a witness who recognizes a voice and uses this identification to name the speaker is properly admissible [citations] and any uncertainty of the recognition goes only to the weight of the testimony. [Citation.]" (*Id.* at pp. 586-587; see *People v. Eaton* (1959) 171 Cal.App.2d 120, 123 ["testimony relating to the identity of a voice is generally considered competent, its probative value being a question of fact"]; *Connell v. Clark* (1948) 88 Cal.App.2d 941, 947 [the identification of a person by voice was the proper subject of lay opinion testimony]; *People v. Lorraine* (1938) 28 Cal.App.2d 50, 54 [the identity of a person in a telephone conversation "may be established by proof of recognition of his voice"]; see also 1 Witkin, Cal. Evidence (5th ed. 2020) Opinion Evid., § 5, p. 613 ["'It is universally recognized that the voice, as well as the physical appearance of a person, is a means by which identification is made possible, there being no more similarity in the voices of different people than there is in their physical appearance'"].) A trial court's ruling on the admission if lay opinion voice identification is reviewed for abuse of discretion. (*People v. Leon* (2015) 61 Cal.4th 569, 600.)

Courts have identified two predicates for the admissibility of voice identification testimony. First, the witness must testify

7

from personal knowledge as to the identity of the speaker, and second, the testimony must be helpful to the trier of fact. (See, e.g., *People v. Mixon* (1982) 129 Cal.App.3d 118, 128 [addressing lay opinion testimony about identity of persons depicted in surveillance photographs].)

Here, the first predicate was satisfied by Sergeant Yoos's testimony that he had personally listened to upwards of 30 hours of calls made or received by appellant and had watched the body-camera footage of appellant's arrest. Sergeant Yoos was therefore "sufficiently familiar" with appellant's voice "to later identify him in the same or another medium." (*People v. Larkins* (2011) 199 Cal.App.4th 1059, 1068; see *United States v. Thomas* (9th Cir. 1978) 586 F.2d 123, 133 [agent's three phone conversations with the defendant laid the requisite foundation for the agent's familiarity with the speaker].)

Appellant contends the second predicate was not met because the jury, having seen and heard the robbery surveillance tapes and the body-worn camera footage of appellant's arrest, could make its own voice identification. This disregards the fact that appellant's face was covered during the robberies and that there was "[v]ery little" of the perpetrator's voice on the Shell Gas Station surveillance tape. Appellant did not testify and the jury only heard his voice on the body-worn camera footage. In contrast, Sergeant Yoos had heard "countless hours" of appellant's phone calls and interviews and thus was in a better position to identify his voice on the surveillance tapes. Under these circumstances, we cannot conclude the testimony was unhelpful to the jury or that an abuse of discretion occurred.

Even if an error did occur, however, it was harmless. (See *People v. Watson* (1956) 46 Cal.2d 818, 836-838.) The admission

of Sergeant Yoos's testimony did "not usurp or improperly invade" the jury's province (*People v. Ingle* (1986) 178 Cal.App.3d 505, 513) or violate appellant's constitutional right to due process. The jury was instructed with CALCRIM No. 333, which advised: "Witnesses gave their opinions during the trial. You may but are not required to accept those opinions as true or correct. You may give any opinion whatever weight you think appropriate. . . . You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

Moreover, the evidence that appellant was the male perpetrator of the robberies was overwhelming. Appellant not only matched the perpetrator's physical description but officers also recovered from his car a fake gun that matched the one used during the robberies plus items of clothing that matched those worn by the perpetrator. Significant cell phone data also tied appellant to the crimes, and appellant was in possession of Indian currency, which was one of the items taken from the Mobil Gas Station victim.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.          TANGEMAN, J.

9

Ronda J. McKaig, Judge
Superior Court County of Ventura

_____

Angelina Lane, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Arlene A. Sevidal, Supervising Deputy Attorney General, and Minh U. Le, Deputy Attorney General, for Plaintiff and Respondent.