Filed 12/12/24  P. v. Bueno CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082472 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE415125) |
| EDWARD DELARA BUENO, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Belinda Escobosa, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Amanda Lloyd, Alana Cohen Butler, and Anne Spitzberg Deputy Attorneys General, for Plaintiff and Respondent.

Edward Delara Bueno challenges his conviction for unlawfully receiving a motor vehicle in violation of Penal Code section 496d,[1] on three grounds.  First, he argues that the trial court's admission of testimony identifying him constituted prejudicial error as the witness lacked sufficient personal knowledge.  Second, he argues that the prosecutor committed prejudicial error in her closing argument when she made statements appearing to lower the People's burden of proof.  His final argument is that the cumulative effect of evidentiary errors requires reversal.  We reject his contentions and affirm the judgment.

FACTS AND PROCEDURAL BACKGROUND

In July 2022, a patron reported to casino personnel that her car was stolen from the casino's parking lot.  Several days later, the police located her stolen car, but the seats, stereo, battery, and other items, including a vacuum cleaner, were missing.  The casino's surveillance manager investigated, including reviewing the casino's video surveillance footage.  The manager backtracked from the parking area to the casino any activity involving the stolen car, and the person driving it away.

The surveillance video showed the patron arrived in her car at 9:35 a.m. and parked it in the casino parking structure next to a white minivan.  Two men parked the minivan a couple hours earlier and walked into the casino.  One of the men wore a distinctive outfit consisting of a red shirt, red shorts, red athletic shoes, and a black baseball cap; video footage showed this person using a casino player's card in the casino's gaming machines.  At 9:46 a.m., this person, still dressed in red, exited the casino's elevator and walked into the parking garage.  After pausing between the

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

minivan and the car for a short time, he opened the car's driver's side door and drove the car out of the casino's garage.

To ascertain who drove off with the patron's car, the surveillance manager used the casino's extensive database. For instance, the casino tracks real-time information about player card use, individual player activity, keeps Department of Motor Vehicle license photos (gathered when patrons sign up for a player's card), video footage captured from many cameras in and around the casino, and time stamps on many types of transactions. Every time a player's card is inserted into a machine, it leaves a "digital trail" reflecting whose card is used, among other data.

In this instance, the surveillance manager cross-referenced time-stamped surveillance footage from the casino gaming area against time-stamped casino player's card data. The surveillance manager compared Bueno's driver's license photo, from the casino's file, with the male in the surveillance video footage. Further, the casino's player's card database showed that Bueno's player card was inserted in 25 different machines over approximately two hours. The surveillance manager also testified that it was Bueno who "arrived on the gaming floor . . . removed [his] player's card that was given to him from his wallet and inserted that into the slot machine." The manager opined it was Bueno wearing the red outfit with the black cap, and who drove the patron's car out of the parking structure.

Bueno was charged by amended information with one count of unlawfully receiving a motor vehicle in violation of section 496d, a felony. The amended information also alleged that Bueno had a prior felony conviction for violating section 496d, within the meaning of section 666.5, subdivision (a). In June 2023, a jury found Bueno guilty of violating section 496d. On that same day, Bueno admitted to his prior convictions.

In July 2023, Bueno was sentenced to three years in county jail. The court also ordered Bueno to pay general fines and fees and to pay restitution to be determined later.

DISCUSSION

1. *The Court Properly Allowed the Surveillance Manager's Testimony.*

Bueno argues that the trial court abused its discretion when it permitted the surveillance manager to identify him as the perpetrator of the theft because the manager had no personal knowledge of Bueno.[2] We disagree with this argument.

We review the trial court's ruling on the admission of evidence for an abuse of discretion. (*People v. Dworak* (2021) 11 Cal.5th 881, 895.) In doing so, we deferentially consider whether the ruling exceeded the bounds of reason or is arbitrary or capricious. (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)

The type of testimony offered by the surveillance manager is not per se inadmissible and had probative value. California courts "have long upheld admission of testimony identifying defendants in surveillance footage or photographs," "finding it proper for officers to predicate their opinion on 'contacts with defendant, their awareness of his physical characteristics on the day of the [crime], and their perception of the film taken of the events.' " (*People v. Leon* (2015) 61 Cal.4th 569, 601 (*Leon*) [detective could offer opinion identifying defendant in surveillance video based upon comparison of similarities in clothing and distinctive attributes of a vehicle displayed in

---

2  Although the Attorney General contends that this issue was forfeited, we disagree and conclude that Bueno's objections to the surveillance manager's testimony at trial were sufficient to preserve it for appeal. (Evid. Code, § 353; *People v. Partida* (2005) 37 Cal.4th 428, 433–434.)

video]; *People v. Larkins* (2011) 199 Cal.App.4th 1059, 1067 (*Larkins*) [witness could offer opinion identifying defendant in surveillance video based upon "distinguishing characteristics as defendant's posture, gait and body movements" observed in other surveillance videos]; *People v. Virgil* (2011) 51 Cal.4th 1210, 1253–1254 [detective could testify that defendant resembled depiction in a composite sketch]; *People v. Perry* (1976) 60 Cal.App.3d 608, 613 [witnesses permitted to offer identification opinion "predicated . . . upon their prior contacts with defendant, their awareness of his physical characteristics . . . , and their perception of the film taken of the events"].)

We address whether the surveillance manager's opinion is sufficiently based upon personal knowledge—whenever acquired—to permit the evidence's introduction. Although the surveillance manager did not have personal knowledge of Bueno prior to the vehicle theft, he did view a longer version of the surveillance video than the jury viewed, reviewed Bueno's player's card activity and painstakingly backtracked "every step that [Bueno] made on the gaming floor" through the surveillance video, viewed Bueno's driver's license and identified him at trial. The trial court did not abuse its discretion in admitting the surveillance manager's testimony, particularly where Bueno was readily identifiable due to his unique appearance and stature.

Further, the fact the surveillance manager's knowledge consisted of video images, rather than physical encounters, goes to the weight, not admissibility, of the evidence. (*Larkins*, *supra*, 199 Cal.App.4th at p. 1068 ["One can be sufficiently familiar with a person by seeing photos of him to later identify him in the same or another medium. We do not doubt that a starstruck young lady who has seen pictures of Justin Bieber in magazines

5

could easily identify him were she to see him on a video, on television or in person."].)

Even if the trial court should have excluded the evidence, Bueno has not established prejudice warranting reversal. (See *People v. Watson* (1956) 46 Cal.2d 818, 836–838.) The admission of the surveillance manager's testimony did "not usurp or improperly invade" the jury's province (*People v. Ingle* (1986) 178 Cal.App.3d 505, 513) or violate Bueno's constitutional right to due process. The jury was instructed that they need not accept the surveillance manager's opinion on Bueno's identification if it did not comport with the other evidence. The court instructed jurors with CALCRIM No. 333, which advised: "Witnesses, who were not testifying as experts gave their opinions during the trial. You may but are not required to accept those opinions as true or correct. You may give the opinions whatever weight you think appropriate. . . . You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence." There are no indications that the jury failed to understand and follow these instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 [jurors are presumed to have followed the court's instructions].)

Moreover, the jury saw all this evidence and had an opportunity to make an independent determination about identity. A copy of Bueno's driver's license and the report showing his player's card activity were admitted into evidence, and surveillance video footage was played for the jury and admitted into evidence. Both the California Supreme Court and this court have concluded that under such circumstances, a lay opinion identifying a defendant is not prejudicial, even if erroneously admitted. (*Leon*, *supra*, 61 Cal.4th at p. 601 ["[B]ecause the surveillance video was played for the jury, jurors could make up their own minds about whether the

6

person shown was defendant."]; *Larkins*, *supra*, 199 Cal.App.4th at p. 1068 ["[T]he jurors were able to test the [witness's] opinion that defendant was the person in the . . . videos because . . . they could test his ability to correctly identify defendant in the three videos they were shown."].)

The court did not abuse its discretion in admitting the surveillance manager's testimony.

2. *The Prosecutor Did Not Err During Closing Argument.*

Bueno next argues that the prosecutor erred during closing argument by making comments which suggested she had a lower burden of proof. Specifically, Bueno states the prosecutor accomplished this aim by arguing a "reasonable" account of the evidence was sufficient to meet the prosecution's burden. There is no dispute that Bueno failed to object to the prosecutor's closing argument in the trial court, and therefore this issue is forfeited on appeal. (*People v. Beck and Cruz* (2019) 8 Cal.5th 648, 659 [claim forfeited where defendants "did not object to the challenged argument or seek an admonition, and no exception to the general rule requiring an objection and request for admonition applies"].)

Moreover, Bueno failed to meet his burden to show counsel was ineffective for failing to object to the prosecutor's statements. (*People v. Centeno* (2014) 60 Cal.4th 659, 674 [defendant "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice"].) Here, Bueno's counsel had no basis upon which to object as nothing in the prosecutor's closing argument lessened the burden of proof, (*People v. Cole* (2004) 33 Cal.4th 1158, 1203 ["Although defendant singles out particular sentences to demonstrate misconduct, we must view the

7

statements in the context of the argument as a whole."].)  Additionally, counsel's failure to object was not prejudicial because there was not "a reasonable probability that . . . the result of the proceeding would have been different."  (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

      3. *No Cumulative Error.*

      Bueno's final argument is that the cumulative effect of the evidentiary errors resulted in prejudice, requiring reversal.  We disagree.  "[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error."  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)  Because we found no errors, there can be no prejudicial cumulative impact.

DISPOSITION

      The judgment is affirmed.

RUBIN, J.

WE CONCUR:


KELETY, Acting P. J.


CASTILLO, J.

8